JUDGE STANTON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 12 CIV 1034

—————————————————————— x

BRIAN P. HENDERSON, Individually and On :
Behalf of All Others Similarly Situated,

                    Plaintiff,

      vs.

CARBO CERAMICS, INC., GARY
KOLSTAD and ERNESTO BAUTISTA,

                Defendants.

—————————————————————— x

Civil Action No.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS

<u>JURY TRIAL DEMANDED</u>



RECEIVED
FEB 09 2012
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Carbo Ceramics, Inc. ("Carbo Ceramics" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of Carbo Ceramics between October 27, 2011 and January 26, 2012, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District. In addition, Carbo Ceramics common stock is traded over the New York Stock Exchange ("NYSE"), which is located in this District.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.     Plaintiff Brian P. Henderson, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Carbo Ceramics during the Class Period and has been damaged thereby.

7.     Defendant Carbo Ceramics manufactures and supplies ceramic proppants primarily used in the hydraulic fracturing of natural gas and oil wells in the United States and internationally.

8.     (a)     Defendant Gary Kolstad ("Kolstad") served as Carbo Ceramics' President and Chief Executive Officer during the Class Period.

       (b)     Defendant Ernesto Bautista ("Bautista") served as Carbo Ceramics' Vice President and Chief Financial Officer during the Class Period.

       (c)     Defendants Kolstad and Bautista are collectively referred to herein as the "Individual Defendants."

9.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the above officers of Carbo Ceramics, by virtue of their high-level positions with the Company, directly participated in the

- 2 -

management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NYSE, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Carbo Ceramics, each of the Individual Defendants had access to the adverse undisclosed information about Carbo Ceramics's

business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Carbo Ceramics and its business issued or adopted by the Company were materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is, therefore, primarily liable for the representations contained therein.

14.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Carbo Ceramics common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme:  (i) deceived the investing public regarding Carbo Ceramics's business, operations, management and the intrinsic value of Carbo Ceramics common stock; and (ii) caused Plaintiff and other members of the Class to purchase Carbo Ceramics common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the common stock of Carbo Ceramics during the Class Period, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the

Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Carbo Ceramics common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Carbo Ceramics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Carbo Ceramics; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     Defendant Carbo Ceramics manufactures and supplies ceramic proppants primarily used in the hydraulic fracturing of natural gas and oil wells in the United States and internationally.

22.     The Class Period commences on October 27, 2011.  On that date, Carbo Ceramics issued a press release announcing its financial results for the third quarter of 2011, the period ending September 30, 2011.  For the quarter, the Company reported net income of $36.9 million, or $1.59 per share, on revenues of $167.1 million.  Defendant Kolstad commented on the announcement, stating, in pertinent part, as follows:

> We are pleased that CARBO set a number of financial and operational records during the quarter. The exceptional third quarter results continued to highlight the importance that our clients place on high conductivity proppant, especially in the North American liquids-rich resource plays such as the Bakken, Colony Granite Wash, Eagle Ford, and Permian.
>
> The demand by E&P operators for our high quality, high conductivity ceramic proppant continues to grow, as evidenced by the company's record ceramic proppant sales volume for the quarter. The benefit E&P operators see, as measured by increased production and higher estimated ultimate recovery (EURs), continues to enhance their economic returns. We continue to work with our clients to optimize their fracs and maximize their profit through Economic Conductivity® analysis.
>
> Regarding our commitment to capacity growth, we were excited to commence production ahead of schedule at the company's newest 250 million lb. production line at our Toomsboro, Georgia plant.

With respect to the Company's outlook, Defendant Kolstad was quoted, in pertinent par,t as follows:

> We exited the third quarter with positive momentum. As a result, we expect proppant sales volumes to remain healthy, tempered by typical fourth quarter seasonality. Although broader economic issues remain fluid and commodity prices continue to fluctuate, we remain optimistic with respect to proppant demand in 2012. Noteworthy is the continued migration of North American upstream investment towards liquids-rich resource plays, where multi-phase flow reservoir conditions benefit the most from CARBO's high conductivity ceramic proppant.

> We were pleased to commence operations on Line 4 at Toomsboro ahead of schedule and we expect this line to produce at capacity during the fourth quarter. The addition of this line increases our total ceramic proppant capacity to 1.75 billion pounds per year.

> Regarding our future ceramic plant site in Millen, Georgia, we have completed the due diligence process and are moving forward with the purchase of the real estate needed to construct the plant. Our environmental permit application has been submitted to the Georgia Environmental Protection Department. We have targeted this site for an initial manufacturing capacity of up to 500 million pounds annually and, subject to obtaining permits and approvals in a timely manner, the plant could commence production before the end of 2013.

> With respect to our resin-coating capacity expansion, New Iberia Line 2 remains on schedule for completion near the end of the fourth quarter. Once completed, this line will increase CARBO's annual RCS capacity to 350 million pounds. CARBO's 600 million pound RCS facility in Marshfield, Wisconsin is on schedule for completion before the end of 2012. Additionally, we continue to acquire high quality raw materials for this business, and have already secured multiple years of northern white sand reserves.

> Going forward, with our strong balance sheet and cash generation capability, we will continue to focus on organic growth, dividends, share repurchases and acquisitions.

23.     Following the issuance of the press release, on October 27, 2011, Carbo Ceramics held a conference call with analysts and investors to discuss its earnings and operations (the "October 27th Conference Call"). During the conference call, Defendants made numerous positive statements about the Company and its operations. With repect to the "Outlook," Defendant Kolstad stated, in pertinent part, as follows:

> Now, turning to the outlook, we exited the third quarter with positive momentum. As a result, we expect proppant sales volume to remain healthy, tempered by the typical fourth-quarter seasonality. Although broader economic issues remain fluid, and

commodity prices continue to fluctuate, we remain optimistic with respect to proppant demand in 2012. Noteworthy, is the continued migration of North American upstream-investment towards liquids-rich resource plays, where multi-phase flow reservoir conditions benefit the most from CARBO's high conductivity proppant.

24.     During the October 27th Conference Call, Defendant Kolstad mentioned "logistical issues" facing the Company but downplayed the impact on Carbo Cermamics.  The following exchange took place as follows:

JOHN DANIEL: Industry, having logistical issues -- you said that earlier in the conference call. Was that a reference to include you guys, or does that apply just to the competition?

GARY KOLSTAD: Well, given our strong distribution, and the way we look forward, if things happen, we tend to catch cold, while the rest of them get pneumonia. But the big shift -- there has been quite a shift out of the Haynesville, going to the other places, and there is an increasing demand for our product and we assume others. We know the questions that E&P ask us, and service companies ask us. So we have a pretty broad audience that we get to listen to, and that is why I made that statement.

JOHN DANIEL: I'm just wondering if the logistical issues facing some of the others might be 1 reason that the seasonal impact and your ability to deliver product, maybe that seasonal impact in Q4 is not as great.

GARY KOLSTAD: No, we will always have seasonal impacts, and then this thing has gotten so big, and the involvement of railroads, and involvement of trucking, and the involvement of weather. I get a big kick out of -- this year, everybody said, we had weather problems in the Bakken; and we said, well, we have got news for you, you're going to have weather problems in the Bakken every year. It is where we are moving the drilling rigs now, that will pose more of a logistical problem in the North.

25.     Defendant Kolstad ended the October 27th Conference Call by representing that demand for the Company's products was strong, stating, in pertinent part, as follows:

Thanks everybody, for joining us this morning. It was a great quarter for us. Line 4 is starting up. We are going to continue to try and meet the additional demand for our high quality, high conductivity ceramic proppants in these incredible liquids-rich plays. We are going to continue to work on further capacity additions, with the 300 million pounds of resin-coating at New Iberia 2, online at the end of the fourth quarter; additional 600 million pounds of resin-coated sand capacity before the end of 2012, in Marshfield, Wisconsin; and up to 500 million pounds of ceramic in Milan, Georgia, before the end of 2013.

For the fourth quarter, as we mentioned, we expect proppant sales volumes to remain healthy, tempered by typical fourth-quarter seasonality. Our strategy remains steadfast. We will continue to expand our Company in a competitive marketplace and, doing so, will continue to grow capacity of high quality, high conductivity proppant, leverage and expand our distribution model, and deliver upon the promises we made to our clients.

I'm excited about technology and it remains the core commitment for our future growth. I want to thank our entire CARBO Team for another exceptional quarter, and thank you all. And we will talk to you next quarter.

26.     In response to the positive earnings announcement, the price of Carbo Ceramics stock surged rising from $123.12 per share to $144.18 per share on heavy trading volume.

27.     The statements referenced above in ¶¶22-25 were each materially false and misleading when made because they failed to disclose and/or misrepresented the following adverse facts, among others:

(a)     that the Company was experiencing a dramatic decline in proppant sales in the Haynesville region;

(b)     that the Company was being negatively impacted by logistical problems such that it was not able to shift resources to liquid plays where drilling activity was increasing; and

(c)     based on the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its operations and earnings.

28.     On January 26, 2012, Carbo Ceramics issued a press release announcing its financial results for the fourth quarter of 2011 and fiscal year 2011, the periods ending December 31, 2011. For the quarter, the Company reported net income of $33.1 million, or $1.43 per share on revenues of $158.1 million.  Defendant Kolstad commented on the results, stating, in pertinent part, as follows:

2011 was a record year for CARBO Proppant volumes increased 19 percent year-over-year to 1.6 billion pounds. Revenues and net income increased 32 and 65 percent, respectively, year-over-year. We continued to focus on returning cash to our

shareholders by increasing the quarterly dividend 20 percent. This marked the 11th consecutive year the Company has increased its dividend.

For the fourth quarter 2011, proppant volumes increased 16 percent, revenues increased 32 percent and net income increased 59 percent when compared to the fourth quarter 2010. Notwithstanding this solid performance, the fourth quarter had its challenges beyond typical seasonality.

The severe decline in natural gas prices during the quarter led E&Ps to reduce capital spending in natural gas basins and increase capital spending in liquids-rich basins. The largest impact associated with this shift in capital spending was a reduction of approximately 70 percent in our Haynesville proppant sales volumes from the third quarter of 2011, which was partially offset by growth in the liquids-rich plays and international markets.

The growth of activity in liquids-rich plays contributed to logistical issues in the industry. These logistical issues burdened our distribution network. From our perspective, the industry's response to the decline of activity in the Haynesville, reallocation of proppant supply and demand and adjustment to natural gas fundamentals will take some time to work out. During the fourth quarter 2011, we accelerated several distribution infrastructure investments to address the logistical challenges we faced.

The economic success our clients achieve by utilizing our high conductivity proppant in their oil and natural gas wells continues to give us confidence in the long-term demand for our proppant.

29.     Following the issuance of the press release, Carbo Ceramics held a conference call with analysts and investors to discuss its earnings and operations.  During the conference call, Defendants admitted that the Company had seen a 70% decline in proppant sales in the Haynesville region and that it had been unable to shift resources to various liquid plays due to logistical issues.

30.     In response to the Company's announcements, the price of Carbo Ceramics common stock declined from $130.72 per share to $103.76 on heavy trading volume.

31.     The market for Carbo Ceramics common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Carbo Ceramics common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Carbo

Ceramics common stock relying upon the integrity of the market price of Carbo Ceramics common stock and market information relating to Carbo Ceramics, and have been damaged thereby.

32.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Carbo Ceramics common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

33.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Carbo Ceramics' business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Carbo Ceramics and its business, prospects and operations, thus causing Carbo Ceramics common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing Carbo Ceramics common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

34.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in

the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Carbo Ceramics, their control over, and/or receipt and/or modification of Carbo Ceramics' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Carbo Ceramics, participated in the fraudulent scheme alleged herein.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

35.     At all relevant times, the market for Carbo Ceramics common stock was an efficient market for the following reasons, among others:

(a)     Carbo Ceramics stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     as a regulated issuer, Carbo Ceramics filed periodic public reports with the SEC and the NYSE;

(c)     Carbo Ceramics regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Carbo Ceramics was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

36.     As a result of the foregoing, the market for Carbo Ceramics common stock promptly digested current information regarding Carbo Ceramics from all publicly available sources and

reflected such information in Carbo Ceramics stock price. Under these circumstances, all purchasers of Carbo Ceramics common stock during the Class Period suffered similar injury through their purchase of Carbo Ceramics common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

37.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Carbo Ceramics who knew that those statements were false when made.

## COUNT I

**Violation of Section 10(b) of
the Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary

- 13 -

in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

41.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Carbo Ceramics common stock. Plaintiff and the Class would not have purchased Carbo Ceramics common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

42.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Carbo Ceramics common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Carbo Ceramics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Carbo Ceramics, and their ownership of Carbo Ceramics stock, the Individual Defendants had the power and authority to cause Carbo Ceramics to engage in the

wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  February 9, 2012

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

- 15 -

HOLZER HOLZER & FISTEL LLC
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
Telephone:  770/392-0090
770/392-0029 (fax)
mfistel@holzerlaw.com

DYER & BERENS LLP
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, Colorado 80203
Telephone:  303/861-1764
303/395-0393 (fax)
jeff@dyerberens.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the complaint and authorized its filing.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| CRR | 13 JAN 2012 | 74 | 9000.99 |
| | 13 JAN 2012 | 42 | 5007.11 |
| | 26 JAN 2012 | 26 | 2941.46 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| CRR | 13 JAN 2012 | 74 | 8789.28 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8ᵗʰ day of FEB , 2012 in SAN DIEGO , CA .
                                                City          State

(Signature) X _Brian P Henderson_

(Print Name) BRIAN P HENDERSON

2